**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

DARIUS GITTENS,

      Plaintiff,

v.

MILDRED SCHOLTZ, et al.,

      Defendants.

Civil Action
No. 18-2519 (RBK)(KMW)

**OPINION**

<u>**ROBERT B. KUGLER, U.S.D.J.**</u>

Plaintiff Darius Gittens, a prisoner confined at Northern State Prison, in Newark, New Jersey, is proceeding pro se with a civil rights complaint pursuant to 42 U.S.C. § 1983. For the reasons stated in this Opinion, the Court will allow the Complaint to proceed in part.

## I.    BACKGROUND

The Court will construe the factual allegations in the Complaint as true for the purpose of this Opinion. Plaintiff names Mildred Scholtz, Matthew Leith, Captain McDonnell, J. Larkins, T. Blango, P. Blango, Mary Anne O'Brien, Bruce Garganio, Aimee Beigard, Joseph Donelly, Joanne Schwartz, Gary M. Lanigan, Marcus Hicks, Darcella Sessomes, T. Case, and John Doe.

This case arises from Plaintiff's time at the Burlington County Jail, as a pretrial detainee. On or about December 16, 2015, Plaintiff entered the Burlington County Jail and notified a nurse of his "destroyed knees and destroyed shoulders" which cause him "extreme chronic pain." (ECF No. 1, at 11).

Despite Plaintiff's chronic conditions, officials housed him in a cell with two other inmates, and assigned him the floor mattress, which caused Plaintiff a great deal of pain and discomfort. Moreover, Plaintiff's mattress was nine inches from the toilet bowl, which resulted in his cellmates carelessly urinating on Plaintiff and his mattress on a regular basis.

Additionally, Plaintiff complained of a number of conditions, such as: inadequate showering facilities; low cell temperatures; unsanitary conditions, *e.g.*, mice and roaches; subpar food, and the lack of grievance forms. (ECF No. 1, at 13). Plaintiff complained about these conditions orally and in writing, or both, to a large number of the Defendants. Generally, Plaintiff alleges that Defendants ignored his letters and grievances or explicitly refused to address their contents.

In particular, on February 1, 2016, Plaintiff finally received some grievance forms, made over a hundred copies of the grievance form, and distributed them to other detainees. Over the next several days, Plaintiff filed six separate grievances regarding the conditions above, as well as with regard to the denial of access to the law library and a general lack of reading material.

In response to Plaintiff's actions, Defendant McDonnel issued a "specious" disciplinary report on February 11, 2016, charging Plaintiff with obstructing a camera. Officials then transferred Plaintiff out of general population and into punitive segregation. At the hearing, officials did not provide Plaintiff with an advocate, allow him to interview witnesses, or otherwise collect or present evidence. Additionally, the officer presiding over the hearing was Defendant P. Blango, while the primary witness was Defendant T. Blango, his twin brother. It appears that Defendant P. Blango found Plaintiff guilty, and Plaintiff received a fifteen day sentence in punitive segregation.

Plaintiff appealed that finding and on February 24, 2016, he received a denial of that appeal from Defendant Leith, dated February 20, 2016. Plaintiff then attempted to appeal that decision to the New Jersey Superior Court, Appellate Division, but received no response.

While in punitive segregation, officials did not allow Plaintiff to exercise outside of his cell and did not provide him with any clean clothes, sheets, law library access, or general reading

materials. Further, during that stay, an Officer Wells[1] ordered Plaintiff out of his cell and then intentionally set off the sprinkler system to destroy Plaintiff's legal papers. Although Officer Wells issued a disciplinary report, a different officer dismissed those charges.

On or about February 26, 2016, officials transferred Plaintiff back to the general population unit, where Plaintiff lived under the same or similar conditions discussed above. Plaintiff continued to report and complain of these conditions, including to the Burlington County Board of Chosen Freeholders, who intentionally withheld funding and allowed the "decay of the jail." (ECF No. 1, at 21). Plaintiff alleges, however, that the "jail was monitoring and probably diverting complaints attempting to expose the illegal conditions of confinement at the jail." (*Id.* at 22).

After receiving his sentence, officials transferred Plaintiff on November 16, 2016, to the Central Reception and Assignment Facility, but did not allow him to take any of his legal materials. At the time, Plaintiff was unaware that a state court judge ordered the jail, on November 22, 2016, to preserve Plaintiff's legal materials and forward them to Plaintiff's new location. Despite Plaintiff's complaints and grievances to a number of Defendants, it appears that officials refused to deliver the legal materials until June 6, 2017, when Plaintiff's attorneys retrieved the materials from the jail.

On February 23, 2018,[2] Plaintiff filed the instant Complaint, alleging that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as related state law claims. He also seeks to bring some of his claims as a class action, naming other detainees who complain of the conditions at the Burlington County Jail. (ECF No. 1, at 29).

---

[1] Plaintiff does not appear to name Officer Wells as a defendant in this matter.

[2] The date on the cover letter of Plaintiff's Complaint. (ECF No. 1-1).

## II.    STANDARD OF REVIEW

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis. See* 28 U.S.C. § 1915(e)(2)(B).  District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See id.* According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim,[3] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678.  Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013) (finding that the Rule 12(b)(6) standard applies to dismissal of complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim).

## III.     DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution, and related claims.  To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.,* 36 F.3d 1250, 1255–56 (3d. Cir. 1994)).  Plaintiff sets forth approximately fifteen different counts, some with subheadings alleging state law claims.

### A.  Claims Against Defendant Lanigan

As an initial matter, to be liable within the meaning of 42 U.S.C. § 1983, a defendant must be a "person." The Supreme Court held in *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989), that a State or an official thereof acting in his or her official capacity is not a "person" within the meaning of § 1983.

Further, under the Eleventh Amendment, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  This immunity is available to all States, as well as any entity that is "an arm of the state." *See Mt. Healthy City Bd. of Educ. v. Boyle*, 429 U.S. 274, 280 (1977).

In general, the Eleventh Amendment bars suits from private parties seeking to impose liabilities on public funds in a State's treasury, unless the State explicitly waives such immunity. *Bell v. Holmes*, No. 13-6955, 2015 WL 851804, at *3 (D.N.J. Feb. 23, 2015).  Thus, in order for a State or one of its agencies to be subject to a suit for money damages, it must consent to such a suit.

In this case, Plaintiff has filed suit against Defendant Lanigan, then commissioner of the New Jersey Department of Corrections ("NJDOC"). In the Third Circuit, courts have consistently held that the NJDOC and its subsidiaries are not "persons" subject to liability under § 1983 as they are immune from suit in federal court under the Eleventh Amendment. *See Wilson v. Haas*, No. 11-7001, 2012 WL 6761819, at \*5 (D.N.J. Dec. 28, 2012); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989). Since Defendant Lanigan is an agent of such a state entity, he is not a "person" within the meaning of § 1983 when acting in his official capacity. *See Betts v. New Castle Youth Development Center*, 621 F.3d 249, 254 (3d Cir. 2010) (finding that "[i]ndividual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity"). Because Defendant Lanigan, acting in his official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, the Court will dismiss with prejudice all claims against Defendant Lanigan in his official capacity.

Additionally, although Plaintiff may generally seek *prospective* injunctive and declaratory relief against Defendant Lanigan in his individual capacity, he may not seek *retroactive* declaratory relief. Courts construe lawsuits seeking retroactive relief, "usually in the form of monetary damages and declaratory judgment for past conduct[] against a state official . . . as suits against the State because a judgment for damages against an official would necessarily require payment from the government." *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 483 (D.N.J. 2001). Accordingly, the Court will dismiss with prejudice all claims against Defendant Lanigan in his individual capacity, as they only seek retroactive declaratory relief against Defendant Lanigan.

**B. Claims Regarding Grievances**

Next, the Court construes Counts L and N to claim that Defendants ignored or destroyed Plaintiff's letters and grievances, and at times refused to provide him with grievance forms, in violation of the First and Fourteenth Amendments. Plaintiff also appears to pepper, at least in part, similar claims throughout his Complaint.

Generally, the First Amendment confers a "right to petition the Government for redress of grievances," which traditionally involves access to the courts. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.17 (3d Cir. 2018); *Horsh v. Clark*, No. 17-316, 2019 WL 1243009, at *5 (W.D. Pa. Mar. 18, 2019). The First Amendment, does not however, "impose any affirmative obligation on the government to listen, to respond or . . . to recognize" a grievance. *E.g.*, *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979); *see also Minnesota State Bd. Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications.").

Similarly, there is no constitutional right to an "administrative grievance process or any particular relief . . . through such process." *Horsh*, No., 2019 WL 1243009, at *5 (citing *Jones v. N. C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977)); *Bakhtiari v. Spaulding*, No. 17-16, 2017 WL 2778524, at *14 (M.D. Pa. June 27, 2017) ("Even if the prison provides for a grievance procedure . . . violations of those procedures do not give rise to a civil rights cause of action.").

These claims are equally meritless as due process challenges under the Fourteenth Amendment. "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." *Peterson v. Holmes*,

No. 12-865, 2012 WL 5451435, at *7 (D.N.J. Nov. 7, 2012) (quoting *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997)).  Consequently, although the failure to respond to Plaintiff's letters and grievances may implicate other rights, it did "not violate his rights to due process and is not actionable." *Id.*  (quoting *Stringer v. Bureau of Prisons*, 145 F. App'x 751, 753 (3d Cir. 2005)).

Likewise, Plaintiff's allegation under Count J, that Defendant Leith received Plaintiff's appeal grievance and denied relief in violation of the Fourteenth Amendment, (ECF No. 1, at 32), lacks merit.  As Plaintiff had no federal constitutional right to a grievance procedure, Plaintiff's "dissatisfaction with a response to . . . [a] grievance[] does not support a constitutional claim." *Mayo v. Wetzel*, No. 13-1174, 2015 WL 3935372, at *6 (May 28, 2015) (citing *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005)), *report and recommendation adopted*, 2015 WL 3939287 (M.D. Pa. June 26, 2015).  Moreover, a defendant's "after-the-fact participation in reviewing grievances or appeals, [is] generally an insufficient basis to establish 'personal knowledge' for purposes of § 1983."[4] *Rosa-Diaz v. Dow*, 683 F. App'x 103, 107 (3d Cir. 2017); *Paluch v. Sec'y Pennsylvania Dep't Corr.*, 442 F. App'x 690, 695 (3d Cir. 2011) (observing that "there is no apparent obligation for prison officials to investigate prison grievances").

Accordingly, the Court will dismiss with prejudice Counts J, L, and N, as well as any other claims to the extent that Plaintiff specifically challenges the failure to respond to his letters and grievances under the First and Fourteenth Amendment.

---

[4] In this context, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

### C.  Destruction and Withholding of Legal Materials

Next, under Count B and Count E, Plaintiff claims that certain Defendants destroyed or withheld his legal materials in violation of his rights under the First and Fourteenth Amendments.

To the extent that Plaintiff alleges that the destruction of his legal materials, standing alone, violates the Fourteenth Amendment, the Court will dismiss those claims.  Although inmates have a due process right to retain their property, if a state actor intentionally or negligently deprives them of such property, "that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available."  *Love v. New Jersey Dep't of Corr.*, No. 14-5629, 2015 WL 2226015, at \*5 (D.N.J. May 12, 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984)).  As New Jersey has provided detainees with such a post-deprivation remedy, through the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 *et seq*., the Court will dismiss this aspect of Plaintiff's Fourteenth Amendment deprivation claim with prejudice. *Love*, 2015 WL 2226015, at \*5.

In the remainder of these Counts, Plaintiff appears to be pursuing a right to access the courts claim under the First and Fourteenth Amendments.  To plead such a claim,  Plaintiff must allege that Defendants' actions have caused an "actual injury" in the sense that he "lost a chance to pursue a to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that . . . [he has] no other" remedy for the lost claim. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).  The complaint must describe the claim well enough to demonstrate that it is "more than mere hope" and describe the "lost remedy." *Id*.  at 205–06.  Conclusory allegations that an inmate suffered prejudice will not suffice. *Duran v. Merline*, 923 F. Supp. 2d 702, 723 (D.N.J. 2013).

With those principles in mind, assuming *arguendo*, that some Defendants destroyed or withheld Plaintiff's legal materials, Plaintiff fails to state an access to courts claim because he does

not allege an actual injury, at least in the constitutional sense.  Although Plaintiff states that the documents at issue were legal in nature, he fails to allege that he lost the opportunity to pursue any particular lawsuit or claim.  Accordingly, the Court will dismiss without prejudice Plaintiff's access to the courts claims under Counts B and E, as the Court is left to guess whether he was pursuing any particular claim and whether they had any merit.

**D.  Eighth Amendment Claims**

Next, Plaintiff appears to contend that the conditions of his confinement violated, among other things, the Eighth Amendment's prohibition on cruel and unusual punishment. (*See* ECF No. 1, at 36–37 (seeking a declaratory judgment that certain Defendants violated the Eighth Amendment)).  Nearly all of Plaintiff's allegations pertaining to his conditions of confinement, however, occurred before he received his conviction and sentence on October 27, 2016. (*Id.* at 22).

Consequently, to the extent Plaintiff claims that Defendants violated his rights under the Eighth Amendment prior to October 27, 2016, those claims fail because the Eighth Amendment applies only after a court has convicted and sentenced a person for their crimes.  *E.g.*, *Harvey v. Gloucester Cty. Jail*, No. 18-1797, 2018 WL 4735738, at *3 (D.N.J. Oct. 2, 2018); *see also Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  If Plaintiff seeks to raise conditions of confinement claims as a pretrial detainee, he must do so under the Fourteenth Amendment, and the Court will address those claims below. *Harvey*, 2018 WL 4735738, at *3.

As a result, to the extent that Plaintiff seeks to raise independent Eighth Amendment claims regarding his conditions of confinement prior to his conviction and sentence, the Court will dismiss those claims with prejudice.

### E. Americans with Disabilities Act Claim

Plaintiff next argues that certain Defendants violated the Americans With Disabilities Act ("ADA"), by forcing him to sleep on a mattress on the floor without a pillow, which caused him great physical and mental anguish. (ECF No. 1, at 32). Plaintiff maintains that he is disabled because of the limited functioning of his shoulders and knees, and chronic pain therefrom.

Although Plaintiff does not specify what type of ADA claim he wishes to pursue, the Court presumes that he is attempting to set forth a claim under Title II of the ADA. Title II of the ADA generally makes it unlawful for public entities to discriminate against individuals with disabilities in the provision of public services. See 42 U.S.C. §§ 12131–12134. To allege a *prima facie* case under Title II, a plaintiff must show: (1) he is a qualified individual with a disability; (2) that defendants excluded him from a service, program, or activity of a public entity; and (3) that the exclusion was due to his disability. *Perez v. Camden Municipal Court*, No. 14-7473, 2016 WL 7338524, at *3 (D.N.J. Dec. 19, 2016) (citing *Disability Rights New Jersey, Inc. v. Comm'r, New Jersey Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015)).

Assuming *arguendo*, that Plaintiff is a qualified individual and that he has otherwise properly pleaded an ADA claim, this claim fails because sleeping in his cell is not a service, program, or activity under the ADA. *E.g.*, *Scherer v. Pennsylvania Dep't of Corr.*, No. 2004-191, 2007 WL 4111412, at *10 (W.D. Pa. Nov. 16, 2007)(quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Thomas v. Pennsylvania Dep't of Corr.*, 615 F. Supp. 2d 411, 427 (W.D. Pa. 2009). Accordingly, the Court will dismiss Plaintiff's ADA claim with prejudice.

### F. Class Action Claims

It appears that Plaintiff is attempting to bring parts of his Complaint as a class action on behalf of some of the inmates at the Burlington County Jail. Under Federal Rule of Civil Procedure

11

23(a)(4), plaintiffs can only maintain a class action if the class representative "will fairly and adequately protect the interests of the class." *Hennessey v. Atl. Cty. Dep't of Pub. Safety*, No. 06-143, 2006 WL 2711510, at *4 (D.N.J. Sept. 18, 2006). "When confronting a request for class certification from a pro se litigant, however, courts have found that pro se plaintiffs generally cannot represent and protect the interests of the class fairly and adequately." *Id.* (citing *Cahn v. U.S.*, 269 F. Supp. 2d 537, 547 (D.N.J. 2003)).

Here, Plaintiff is a pro se prisoner without formal training in the law. Thus, Plaintiff would not be able to represent the interests of the class and maintain this suit as a class action. *Id. (*citing *Krebs v. Rutgers*, 797 F. Supp. 1246, 1261 (D.N.J. 1992) (denying class certification to pro se plaintiffs without sufficient legal education)). Furthermore, Plaintiff no longer resides at the Burlington County Jail and currently resides at Northern State Prison in Newark, New Jersey. "It would be extremely difficult for him to lead a multi-prisoner litigation when he is separated from the" other inmates he seeks to lead as a class representative. *Id.* Accordingly, to the extent Plaintiff seeks to maintain a class action, the Court will deny that request.

### G.  Statute of Limitations

The Court will now address the statute of limitations since it appears from the face of the Complaint that many of Plaintiff's remaining claims are time barred. "Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 112 (3d Cir. 2013).

Although § 1983 provides a federal cause of action for personal-injury claims, the laws of the State in which the action arose governs the statute of limitations. *Estate of Lagano v. Bergen*

*Cty. Prosecutor's Office,* 769 F.3d 850, 859 (3d Cir. 2014). In New Jersey, the statute of limitations for personal-injury torts is two years. N.J. Stat. Ann. § 2A:14-2. However, while state law provides the applicable statute of limitations, federal law controls when that the statute of limitations begins to accrue. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

Federal law instructs that a § 1983 action begins to run when a plaintiff knows of or has reason to know of the injury. *See Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Significantly, accrual does not depend on whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *See Giles v. City of Phila.*, 542 F. App'x 121, 123 (3d Cir. 2013). Rather, a cause of action accrues when a reasonable person would recognize their injury and its connection to the defendant. *Kriss v. Fayette Cty.*, 827 F.Supp.2d 477, 484 (W.D. Pa. 2011), *aff'd*, 504 F. App'x 182 (3d Cir. 2012). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

Consequently, a plaintiff must file a complaint as to those claims, within two years of accrual. When a plaintiff is incarcerated or detained, however, he may receive the benefit of the prison mailbox rule, "which deems the date that a prisoner delivers his legal materials for filing to prison officials to constitute the date of filing." *Hedgespeth v. Hendricks*, No. 06-3883, 2007 WL 2769627, at *3 (D.N.J. Sept. 21, 2007), *aff'd*, 340 F. App'x 767 (3d Cir. 2009).

In the instant case, February 23, 2018, is the date on the cover letter accompanying Plaintiff's Complaint. (ECF No. 1-1). Accordingly, Plaintiff will receive the benefit of the prison mailbox rule, and the Court will deem February 23, 2018, as the filing date of his Complaint. The Court must now determine when some of Plaintiff's claims began to accrue.

### i. Conditions of Confinement Claims

As discussed above, Plaintiff contends that Defendants have subjected him to, or failed to protect him from, punishment in violation of the Fourteenth Amendment's Due Process Clause. The Fourteenth Amendment's standard for unconstitutional punishment contains both an objective and subjective component. A detainee must show that the deprivation was objectively serious and subjectively show that the defendants acted "with a sufficiently culpable state of mind." *Cartagena v. Camden Cty. Corr. Facility*, No. 12-4409, 2012 WL 5199217, at *3 (D.N.J. Oct. 19, 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) (stating that the "official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Under the Fourteenth Amendment's Due Process Clause, prison officials must satisfy a person's "basic human needs-e.g., food, clothing, shelter, medical care, and reasonable safety.*" Helling v. McKinney*, 509 U.S. 25, 32 (1993). A detainee seeking to show unconstitutional conditions of confinement must clear a "high bar" by demonstrating "extreme deprivations." *Cartagena*, 2012 WL 5199217, at *3 (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004)). To satisfy this objective component, a pretrial detainee must allege facts showing that he suffered a genuine deprivation and hardship over an extended period of time. *Id.* (citing *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978)).

Here, Plaintiff sets forth a litany of grievances about the conditions at the jail, including: (1) triple bunking; (2) sleeping on a floor mattress; (3) inadequate showering facilities; (4) low cell temperatures; (5) unsanitary conditions, *e.g.*, mice and roaches; (6) having the toilet next to his floor mattress; and (7) subpar food.

14

Assuming *arguendo*, that any of those allegations, separately or in totality, violated Plaintiff's Fourteenth Amendment rights, Plaintiff knew or had reason to know of his injuries, as he encountered them, from December 16, 2015, through February 11, 2016, the date of his transfer to punitive segregation. According to Plaintiff, he was very much aware of the "constitutionally [violative] conditions of confinement," and made numerous complaints and grievances regarding them. (ECF No. 1, at 15–16).

Consequently, assuming Defendants subjected Plaintiff to unconstitutional conditions throughout that time period, Plaintiff knew or should have known of his injuries, their connection to the Defendants, and had a complete cause of action as to those claims on February 12, 2016, at the latest. It follows then, that the statute of limitations required him to file a complaint as to those claims on or about February 12, 2018.

Plaintiff did not file the instant Complaint, however, until February 23, 2018, and as such, the statute of limitations bars these claims and any claims with a two-year statute of limitations that began to accrue prior to February 23, 2016. Accordingly, the Court will dismiss without prejudice Counts D, F, L, M, and P, as to events that occurred prior to February 23, 2016, as time barred.

### ii. Retaliation and Due Process Claims

Next, the Court will address Counts H, I, and O, in which Plaintiff alleges that Defendant McDonnell issued a false disciplinary report in retaliation for Plaintiff's efforts to complain about his conditions of confinement. Plaintiff then contends that Defendant P. Blago conducted an unconstitutional disciplinary hearing over that report, by refusing to allow Plaintiff to call any witnesses or present evidence. Plaintiff contends that these actions violated his rights under the First and Fourteenth Amendments.

In order to state a First Amendment claim for retaliation, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

To state a claim for a violation of the Fourteenth Amendment's Due Process Clause in this context, a plaintiff must demonstrate that defendants failed to provide him with:

> 1) written notice of the disciplinary charges prior to the hearing, 2) an opportunity to call witnesses and present documentary evidence when doing so will not compromise the institutional safety and correctional goals of the detention facility and 3) a written statement of the evidence relied upon by the fact finder, as well as the reasons for the disciplinary action.

*Robles v. Albino*, No. 07-01026, 2007 WL 4226383, at *4 (D.N.J. Nov. 26, 2007) (citing *Wolf v. McDonnell*, 418 U.S. 539, 563–67 (1974)).

With those principles in mind, Plaintiff received the disciplinary report on February 11, 2016, and the hearing took place at some point before February 20, 2016. (ECF No. 1, at 17–18). Thus, assuming that Plaintiff has otherwise properly pleaded claims under the First and Fourteenth Amendments, the statute of limitations required him to file a complaint as to his retaliation claim by February 11, 2018, and a complaint as to his due process claim at some point before February 20, 2018.

Again, Plaintiff did not file the instant Complaint until February 23, 2018, and as such, the statute of limitations bars these claims and any related claims with a two-year statute of limitations that began to accrue prior to February 23, 2016. Accordingly, the Court will dismiss without prejudice Counts H, I, and O, as time barred.

### iii. Tolling

Certain statutes and doctrines may allow the Court to toll the statute of limitations, but Plaintiff fails to articulate any basis for such tolling.  For example, New Jersey statutes set forth certain bases for "statutory tolling." *See, e.g.,* N.J. Stat. Ann. § 2A:14–21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A:14–22 (detailing tolling because of non-residency of persons liable).  New Jersey law also permits "equitable tolling" where an adversary's misconduct induced or tricked a complainant into allowing the filing deadline to pass, or where "in some extraordinary way" someone or something prevented plaintiff from asserting his rights, or where a plaintiff has timely asserted his rights through a defective pleading or in the wrong forum. *See Freeman v. New Jersey,* 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002).  However, absent a showing of a defendant's intentional inducement or trickery, the Court should apply the doctrine of equitable tolling sparingly and only where sound legal principles and the interest of justice demand its application. *Id.*

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrines. *See Lake v. Arnold,* 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where extraordinary circumstances prevent a plaintiff from asserting her claims; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. *Id.* at 370 n.9.  In this case, Plaintiff fails to articulate any basis for equitable tolling.

If Plaintiff believes that he can assert facts that warrant tolling, he may file a motion to amend the complaint as to these claims, along with a complete proposed pleading, and brief stating the basis for such tolling.

### H.  Conditions of Confinement Claims After February 23, 2016

The Court will now address Plaintiff's remaining conditions of confinement claims, to the extent that they existed after February 23, 2016.  As discussed above, officials transferred Plaintiff to punitive segregation on February 11, 2016, for approximately fifteen days. (ECF No. 1, at 17). Under Count H, with regard to the conditions of confinement in punitive segregation, Plaintiff complains about: (1) the prohibition of out of cell exercise; (2) the absence of clean clothes and sheets; and (3) access to reading books.[5]

The Court finds that these allegations, either individually or in the aggregate, do not constitute punishment, especially considering Plaintiff's relatively brief assignment in punitive segregation. *Cf.  Veteto v. Miller*, 829 F. Supp. 1486, 1495 (M.D. Pa. 1992).

Turning first to Plaintiff's lack of exercise allegations, his claim fails because he did not allege that he suffered any harm from his inability to exercise outside of his cell. *See, e.g.*, *Coleman v. Hodges*, No. 18-1152, 2018 WL 6618459, at *8 (Nov. 30, 2018) (requiring an allegation of harm or substantial risk of serious harm), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018).  Moreover, many courts have found that a relatively brief denial of out of cell exercise is "simply is insufficient to state a Fourteenth Amendment claim as such a claim is *de minimis* as a matter of law." *See, e.g.*, *id*. (collecting cases); *Bullock v. Cohen*, No. 17-271, 2018 WL 2411604, at *7 (D.N.J. May 29, 2018) ("The limited outdoor recreational time, while less than ideal, is not constitutionally infirm.").

Similarly, Plaintiff fails to allege that his lack of clean clothing and sheets, caused him any harm, "at least in the constitutional sense." *Veteto*, 829 F. Supp. at 1495–96; *see also*, *Robinson v.*

---

[5] Plaintiff also complains about the lack of law library access, but the Court finds that such allegations refer to a denial of access to the courts as discussed above, rather than a deprivation of "basic human needs." *See Helling*, 509 U.S. at 32.

*Ricci*, No. 08-2023, 2012 WL 1067909, at \*14 (D.N.J. Mar. 29, 2012). Although this caused him inconvenience and discomfort, he was not deprived, for example, "of sufficient clothing to keep himself warm in the winter." *Young v. Berks Cty. Prison*, 940 F. Supp. 121, 124 (E.D. Pa. 1996). Nor would a lack of general reading materials constitute a deprivation of "basic human needs-*e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling*, 509 U.S. at 32.

In short, these claims do not add up to a viable conditions of confinement claim, and the Court will dismiss without prejudice Count H. *Bullock*, 2018 WL 2411604, at \*8–9 (dismissing similar claims).

Turning then to Plaintiff's return to general population, the Court will broadly construe the Complaint to allege that all of the conditions from his former general population cell, also affected his new general population cell. The Court has screened the allegations as to this time period and concludes that they do not warrant dismissal at this time. Consequently, the Court will allow Plaintiff's conditions of confinement claim, under Counts D, F, L, M, and P, to proceed at this time, as to events that occurred after February 23, 2016.

Additionally, because the New Jersey Legislature modeled the New Jersey Civil Rights Act ("NJCRA") after 42 U.S.C. § 1983 and created a private cause of action for violations of civil rights under either the United States or New Jersey Constitutions, courts interpret NJCRA claims "analogously to § 1983." *Fisher v. Pratt*, No. 19-273, 2019 WL 519569, at \*5 (D.N.J. Feb. 11, 2019). As a result, the Court will allow the corresponding NJCRA claims to proceed.[6]

---

[6] Under Count O, Plaintiff appears to request that the Court order the jail to create a "secure" and civilian controlled mailbox to avoid the types of violations discussed above. Plaintiff, however, no longer resides at the Burlington County Jail, but rather at Northern State Prison. Accordingly, this transfer moots his request for injunctive relief. *Hayes v. Wilkens*, No. 18-12006, 2018 WL 4908284, at \*3 (D.N.J. Oct. 10, 2018)(citing *Abdul–Akbar v. Watson*, 4 F.3d 195, 206–07 (3d Cir. 1993) (finding that a prisoner's transfer or release from prison moots a claim for injunctive relief because the allegedly unconstitutional conditions no longer affect that prisoner)).

## I.   Claims Regarding the New Jersey Constitution

Plaintiff next complains that certain Defendants violated his rights under Article One, Paragraphs Five and Seven, of the New Jersey Constitution.  As discussed above, the NJCRA creates a private cause of action for violations of civil rights secured under the New Jersey Constitution.

Article One, Paragraph Five provides: "[n]o person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin." N.J. Const. Art. 1, ¶ 5.  Plaintiff does not allege that Defendants treated him differently because of his religion, race, color, ancestry, or natural origin.  Consequently, the Court will dismiss these claims without prejudice.

Next, Article One, Paragraph Seven provides, in relevant part that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." N.J. Const. Art. 1, ¶ 7.  Courts analyze claims under this paragraph as they would a claim under the Fourth Amendment.  *Peteete v. Asbury Park Police Dep't*, No. 09-1220, 2010 WL 5150171, at *8 (D.N.J. Dec. 13, 2010), *aff'd*, 477 F. App'x 887 (3d Cir. 2012).

Plaintiff appears to contend that Defendants searched and seized his legal papers for the purpose of harassment. The Court has reviewed those claims and will permit them to proceed at this time, as to allegations after February 23, 2016.[7] *See Petlock v. Nadrowski*, No. 16-310, 2016

---

[7] Plaintiff does allege that an Officer Wells intentionally destroyed Plaintiff's legal papers by setting off a sprinkler system, but this event occurred prior to February 23, 2016, and Plaintiff does not appear to name Officer Wells as a defendant.

WL 7173781, at *8 (D.N.J. Dec. 8, 2016) (allowing a Fourth Amendment claim to proceed under similar circumstances).

### J.  Criminal Statutes

Plaintiff also seeks a declaration that certain Defendants violated a number of state criminal statutes, N.J. Stat. Ann. §§ 2C:30-2(6), 2C:30-7(a), and 2C:29-9(a), which generally involve official misconduct and judicial contempt.  Plaintiff cannot, however, "bring criminal charges in this Court; that power lies solely with the executive branch." *See, e.g.*, *Telfair v. Post*, No. 18-3842, 2018 WL 3054679, at *12 (D.N.J. June 20, 2018); *Lewis v. Sessions*, No. 17-5475, 2017 WL 7313822, at *1 (D.N.J. Nov. 3, 2017).

Courts "have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties," finding that such plaintiffs lack standing or that such relief is simply unavailable in a civil suit. *E.g.*, *Dicent v. Sears Holdings*, No. 17-332, 2017 WL 1045066, at *5 (Feb. 27, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 1042470 (M.D. Pa. Mar. 17, 2017), *appeal dismissed*, No. 17-1679, 2017 WL 4417851 (3d Cir. June 20, 2017).  Accordingly, to the extent that Plaintiff seeks to prosecute criminal charges the Court will dismiss those claims.

If Plaintiff is attempting to assert a private cause of action for civil damages, none of these statutes appear to "give rise to a private cause of action." *See Yoder v. MacMain Law Grp., LLC*, 691 F. App'x 59, 60–61 (3d Cir. 2017) (refusing to infer a private cause of action from a "bare criminal statute").  This Court is unaware of any New Jersey state court which has found an implied private cause of action under either of the statutes above. *Cf. Henry v. Essex Cty. Prosecutor's Office*, No. 16-8566, 2017 WL 1243146, at *4 (D.N.J. Feb. 24, 2017) (finding that the New Jersey Legislature did not intend to create a private cause of action for a different provision of N.J. Stat.

Ann. § 2C:30).  Accordingly, if Plaintiff contends that there is an implied cause of action under these statutes, he may pursue such claims by filing a motion to amend along with a brief in support of his claims and a proposed amended complaint.

### IV.    CONCLUSION

For the reasons set forth above, the Court will allow the Complaint to proceed in part. An appropriate Order follows.


Dated: July  23,  2019                                    s/Robert B. Kugler
                                                                  ROBERT B. KUGLER
                                                                  United States District Judge